LIEGHLEY, PJ.,
Dissenting.
The plaintiff, Miller, instituted an action in the common pleas court for a declaratory judgment which resulted upon trial in a judgment for the defendant. Appeal was thereupon perfected to this court by the plaintiff. ■
The issue submitted and the determination sought is a declaration of the status of the two defendants while and when riding in the automobile of the plaintiff under the contract hereinafter referred to. For brevity, we shall name the plaintiff as driver and the defendants as riders.
The case was submitted to the trial court upon an agreed statement of facts. The case was submitted to this court upon the same agreed statement of facts supplemented by a stipulation or agreement between counsel that the recital of facts contained in the opinion of the trial judge shall be considered therewith.
The plaintiff and defendants were and are employed by The Standard Oil Company engaged in war work at its plant known as No. 1 Works. The plaintiff and defendants live in the same vicinity or neighborhood. With a view to arranging transportation to and from their work, they entered into a contract as disclosed by certain paragraphs of the stipulation of facts, as follows:
“3. Said plaintiff and defendants have qualified as a riding group under the general supervision of the Plant Transportation Committee of said Standard Oil Company and under the provisions of Sec. 504 (a) (7) of the Revised Tire Rationing Regulations, as amended.
*380 4. On the 12th day of September, 1942, said plaintiff and defendants entered into a written agreement, which said agreement is set forth verbatim in the petition wherein the plaintiff agreed to transport the defendants ‘round trip’ at least four times a week between their present homes and The Standard Oil Company No. 1 Works at Cleveland, Ohio; and under said agreement each of the said defendants agreed to pay plaintiff 20c per day in consideration of said transportation by the plaintiff, said 20c per day being mutually understood to represent one-third of the cost of gasoline and oil consumed on each round trip.
7. Said group riding and consequent contractual relationships between the plaintiff and defendants arise by reason of the orders promulgated by the Office of Price Administration under authority granted it to conserve the rubber stock pile of the United States and to enable the war effort to be more adequately pursued in the face of a complete break-down of the transportation facilities of this country by reason of a rubber shortage.”
The foregoing paragraphs of the agreed statement are deemed by us to be sufficient for the purposes of this opinion.
The trial court decided that the riders were guests and sustained the relation to the driver of host and guests within the meaning of §6308-6 GC which reads as follows:
“Liability of Owners and Operators of motor vehicles to guests:— The owner, operator or person responsible for the operation of a motor vehicle shall not be .liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor, in or upon said 'motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.”
Without undertaking to review all the citations that were submitted to us and are referred to in the briefs bearing to a smaller or larger degree upon a decision of this question, we shall call attention to only three cases.
The case of Dorn v North Olmsted, 133 Oh St 375 is authority for the proposition that the benefit moving from the riders to the driver need not be a money benefit. It may be any consideration resulting in special benefit to the driver. In this ease the driver invited another to enter his automobile for the purpose of pointing out to the driver the residence of one whom he sought to contact and while on the way was injured in a collision between the automobile and a motor bus. The rider in this case was held to be a passenger to whom the driver owed the duty of exercising ordinary care.
The case of Dougherty Admr. v Hall, was decided in October, 1941, by the Court of Appeals of Summit County (9th District). The first paragraph of the syllabus reads as follows:
“A person who had a verbal contract of long standing with another, whereby he paid the other seventy-five cents per week as his share of the cost of gasoline, oil and parking, incidental to the op-' eration of the other’s automobile in transporting him from his home to his place of employment and back, wa's not a guest while being transported home, the two having a common purpose between them, *381 if the latter be necessary to remove one from operation of the guest statute.”
This Dougherty case was appealed to the Supreme Court of Ohio on motion to certify, being case No. 28926 in that Court, and the motion to certify was overruled on January 14, 1942.
Duncan v Hutchinson, 139 Oh St 185 was decided January 21, 1942. The syllabus of this case reads as follows:
“The sharing of the cost of gasoline and oil consumed on a motor vehicle trip taken for pleasure or social purposes, without any business aspect, does not transform into a passenger one who without such exchange would be a guest, and is not “payment”, for transportation within the meaning of the Ohio Guest Statute (§6308-8 GC) so as to make the automobile host liable to such guests in the absence of willful or wanton misconduct.”
It should be noted that the syllabus in the Dougherty case is in complete accord with the' syllabus in the Duncan case, if under the facts of this case at bar the relation of plaintiff and defendants had any business aspect. In the opinion of the Duncan case, at page 189, the Court has this to say:
“On the other hand, where the relationship between the automobile host and a party riding with him has a business aspect and the transportation is supplied for their mutual benefit, any payment or services rendered to the automobile host by such person, for the ride,. will constitute ‘payment therefore’ and will remove the automobile host from the protection of the statute.”
Does' the contract entered into by the parties hereto and now in force have a business aspect? Does the contract comprehend pleasurable or sociable purposes only or at all? Each trip is made for their mutual benefit.
It was and is to their mutual benefit to get to and from their work. Going to and from work is intimately associated with the business of everyone and insepar-. ably a part of it. It is not a social or pleasure adventure.
The driver enjoyed the benefit by the contract in common with the riders of automobile transportation to and from work. He also received a payment in money from éach. He also receives the benefit of extra tire award and gas rationing which but for the contract he might not receive and as a result thereof may have the use and benefit of his ear for his own purposes. To say that this is not a business purpose, as distinguished from pleasure or social purposes, is to ignore all common experience and understanding of such circumstances, but for the presence of our tremendous war effort injected into the question submitted.
Much eloquent language has been expended during the progress of this litigation on the subject of our war involvement. Everybody is absorbed in thought with and over our necessary war effort. All are conscious of the danger that confronts us and all are determined upon a successful termination by every means.
But upon what theory is this problem determinative of the issue presented herein? Any claim that a decision of whether these riders are guests or passengers for hire will influence the result of this great conflict is little more than nothing from a legal standpoint. Whether these riders are guests or passengers for payment under *382 Ohio law as citizens of Ohio is entirely apart from our war effort. If passengers for hire, as they are under our statute as interpreted by our courts, the solution for any embarrassment that may confront the driver is simple. If he fears a charge of negligent operation of his auto, protection is available by means of liability insurance, or the government may supply it through one or the other of its agencies or his employer may arrange it or for it. Deciding the status of these parties under this contract need not detract nor affect our war effort one iota.
These parties are still citizens of Ohio, and Ohio law is still in force and in operation. All operators of automobiles and all riders thereof in Ohio should be charged with the same duties, responsibilities and rights, whether labor in a defense plant or elsewhere is involved.
Martial law has not yet been declared in Ohio. No authority has been cited nor has any ever come to our attention to sustain the proposition that an order or regulation of any Federal Administrative Board shall have the effect of suspending the operation of a state statute as interpreted by the Courts of that State. But for these orders of this Board, no one wouid have the temerity to say that these riders are guests. There is no justification on account of the war for suspending our statute and our law to give effect to a Federal regulation, when there exists many- easy methods for readily accomplishing the same result sought by the Board. A law question is submitted for decision to be decided in accordance with Ohio law to guide and control the conduct and determine the status of Ohio residents under given facts and circumstances.